# HOWARD *v.* BOWES.

---

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; DILIGENCE.

1. Where, in an interference proceeding involving an improvement in racks for supporting fire hose, the idea of a telescoping arm which would receive the links as the hose was pulled from the rack constituted the invention, and it appeared that the original device constructed by one of the parties was not provided with means for preventing such arm from being completely drawn out of its socket, and that an unusual or very sudden pull of the hose from the rack would disconnect the arm and defeat the real purpose of the invention; and to remedy this defect the inventor put a headless set-screw or pin in the arm to hold the latch permanently in place,—it was *held* that the set-screw was a mere mechanical addition to the device and obvious to anyone skilled in the art, and that its absence did not prevent the original test from constituting a reduction to practice.

2. Lack of diligence is shown by the junior · party to an interference, where, for more than a year after he claims to have perfected the

invention, he did. nothing towards asserting his rights, and then acted because the other party put his device embodying the invention on the market, and he fails to offer any valid reason or excuse for his delay.

3. While an inventor is under no obligation to give the public the benefit of his discovery, by failing to do so he runs the risk that some other inventor may do so, and thus in the eyes of the law become the prior inventor, and as such entitled to a patent. (Following *Mason* v. *Hepburn,* 13 App. D. C. 86; *Thomson* v. *Weston,* 19 App. D. C. 373; *Matthes* v. *Burt,* 24 App. D. C. 265; *Bliss* v. *McElroy,* 29 App. D. C. 120; and *Richards* v. *Burkholder,* 29 App. D. C. 485.)

No. 498. Patent Appeals. Submitted May 18, 1908. Decided June 18, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed*

The facts are stated in the opinion.

*Mr. D. P. Wolhaupter, Messrs. C. A. Snow & Co.* and *Mr. C. E. Doyle* for the appellant.

*Messrs. Peirce & Fisher* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court.

This is an interference proceeding, and involves an improved rack for supporting hose for fire protection purposes. The issue is stated in eight counts, but we deem the following sufficiently illustrative of the invention:

"3. In a hose-rack, the combination of a pair of side-supports, and hose-carrying cross-supports or pins slidably mounted upon said side supports and detachable from the outer end of one of said supports, the other end of said supports having an extension for holding the pins as the hose is removed from the rack, substantially as described."

This rack differs from the prior art in that the links are retained on one arm when the hose is removed from the rack, instead of falling to the floor or ground as formerly.

Charles F. Bowes, the senior party, filed February 8, 1905. In his preliminary statement he alleged conception in May, 1904, disclosure in August or early September, model the early part of September, and reduction to practice the early part or middle of September, 1904. It is clearly established that he conceived the invention at or about the time claimed, and that he tested his first device early in September, 1904. This device differs in mechanical construction from the Howard device. In the Howard device the side supports or bars are of unequal length. In the Bowes construction the side bars are of equal length, one bar being provided with a telescoping catch having an extension which engages the other bar. When the hose is drawn from the rack the telescoping section is drawn out and forms an extension to one of the bars, and thereby supports the crosspieces or links which, of course, have been detached from the other and shorter bar. The original Bowes device was not provided with means for preventing the telescoping arm from being completely drawn out of its socket; and it was found that when the hose was violently pulled or jerked from the rack, the telescoping arm would sometimes become disconnected, and thus defeat the real purpose of the invention. Bowes, however, immediately suggested that he would put a headless set-screw or pin in the supporting arm and thus hold the latch permanently in place. This rack was at once publicly exposed in the store of the W. D. Allen Manufacturing Company, of Chicago, and was thereafter frequently subjected to tests. Early in December 1904, steps were taken to secure a patent thereon, and in February, 1905, as above stated, an application was filed. Steps were immediately taken to exploit the invention, and shortly thereafter it was put on the market and extensively advertised.

The Examiner of Interferences found that Bowes conceived the invention when claimed, and that a test of a device embodying his invention was made in the early part of September, 1904. He finds, however, that, inasmuch as the telescoping arm sometimes became separated from the socket, the original device did not constitute a reduction to practice, and that, there-

fore, Bowes was limited to his filing date as his date of reduc-
tion to practice. He, however, restricted Howard to his filing
date, and awarded priority to Bowes.

The Examiners-in-Chief sustained the decision of the Ex-
aminer of Interferences, but placed their decision on their find-
ings that Howard was spurred into activity by knowledge of the
fact that Bowes had entered the field, and that there had been
a wilful concealment of the invention on the part of Howard.
They did not find it necessary to consider whether the original
Bowes device amounted to an actual reduction to practice.

The Commissioner reached the same conclusion as that
reached by the other tribunals, but did not consider whether
Bowes was entitled to an earlier date for reduction to practice
than his filing date.

We think Bowes's original device constituted a reduction to
practice, since it demonstrated the entire practicability of the
idea, and left nothing more for invention. Any mechanic
skilled in the art would have added the means to prevent the
complete withdrawal of the telescoping arm. Telescopes and
spy-glasses contain such devices. Moreover, the testimony
shows that in its then condition the device was an improvement
over the prior art, and that it required an unusual or very sud-
den pull to entirely withdraw the telescoping arm from its
socket. It was the idea of the telescoping arm, which would re-
ceive the links as the hose was pulled from the rock, that consti-
tuted the invention. No patent could have been obtained on
the set-screw, because that was old in the art. We therefore
hold that this set-screw was a mere mechanical addition to the
device and obvious to anyone skilled in the art, and that its
absence did not prevent the original test from constituting a
reduction to practice.

We come now to the consideration of Howard's case. He
testifies that during the period covered by this controversy he
was a manufacturer of hose racks in this city. In his prelimi-
nary statement he alleged that he conceived the invention dur-
ing the month of December, 1902; that during the latter part of
the same month he disclosed the invention by means of a sketch;

and that he reduced to practice by constructing and successfully testing a full-sized rack "during the month of September, 1904." His application was filed November 6, 1905, or eight months after Bowes had filed. There are many inconsistencies. in Howard's testimony and that of his witnesses on the question as to when Howard conceived and disclosed the invention. The view we take of the case renders it immaterial whether he conceived the invention in December, 1902, as claimed, or at a later date. We therefore do not pause to analyze his evidence on this point.

Howard states that nothing whatever was done towards a reduction to practice of his invention until sometime in August or September, 1904, and he is enabled to fix that date solely from the fact that his brother-in-law, Kelsey, was away on vacation, and that he wrote to him concerning the construction and test of the device. He fixes the time when Kelsey was away by introducing a cash book, and admits that he has no independent recollection of the date. This cash book shows that Kelsey was away from July 23 until September 10, 1904, but it also shows that he was absent from November 19 to December 17, 1904, and also in 1905. Kelsey testifies that Howard showed him a sketch of the rack in 1902, and that a completed rack was shown him shortly thereafter. He was asked how he remembered that it was 1902 when he first saw the sketch of the device, and answered that they issued their 1902 catalogue the fore part of the year, and that he remembered remarking that they ought to have shown the new rack in that issue. He admitted, however, that a catalogue was issued in 1904, and that it might have been with reference to that catalogue that he made his remark. Howard himself does not contend that he ever constructed a device until August or September, 1904. The 1904 catalogue contains no mention of the new device. Howard was in Chicago from October 5 to October 17, 1905, and from about October 23 to November 1, of the same year. Soon after reaching Chicago he learned that another and cheaper rack was on the market. He not only learned of the Bowes rack, but saw one. On October 14 he wrote his son in Washington, relative to putting

in an application on their "cheap device."   It does not definite-
ly appear when Howard first saw the Bowes rack, but it is estab-
lished that prior to going to Chicago he had given no thought to
bringing out his new rack.   Considering, therefore, that he went
to Chicago to solicit orders for the rack he was then manufactur-
ing, that the Bowes rack had then become known to the trade,
and that he soon learned all about it, it is inconceivable that he
had not received such information when he wrote his son on
October 14th.   We find, therefore, that his knowledge of the
Bowes rack induced him to turn to his own slumbering in-
vention.

It will be noticed that in his preliminary statement he fixed
his date of reduction to practice as "during the month of Sep-
tember, 1904."   In his testimony he seeks to overcome Bowes's
date of reduction to practice by claiming that he reduced to
practice sometime in the month of August.   Since Kelsey was
away from November 19 to December 17, it is as likely that
Howard's reduction to practice did not occur until during that
time as that it occurred earlier.   Howard's testimony as to when
his first device was reduced to practice is not at all satisfactory.
He was unable to recall where he obtained the various parts
which comprise his exhibit, or any information from which the
credibility of his testimony could have been tested.

Having in mind that Howard in his preliminary statement did
not claim reduction to practice earlier than "during the month
of September, 1904," that he and his witnesses in fixing the date
when his rack was completed and tested rely solely upon the
absence from Washington of Kelsey, that Kelsey was absent
from about the middle of November until about the middle of
December, 1904, that Howard failed to furnish any data from
which his statements could be verified, his admission that noth-
ing whatever had been done towards reducing his invention to
practice from December, 1902, until about the time Bowes
entered the field,—having in mind all these facts, we unhesi-
tatingly conclude that Howard has failed to prove that he re-
duced to practice before Bowes.   Assuming, without deciding,
that Howard conceived the invention in December, 1902, we

find that the idea remained dormant in his mind until sometime in September, November, or December, 1904, when, according to his testimony he constructed and tested a rack embodying his invention. Bowes, knowing nothing of what Howard had done, had then conceived and reduced his invention to practice. After constructing and testing his device, Howard placed the same in a drawer, where it did not again see the light of day until after his visit to Chicago in October, 1905, about a year later. Nothing whatever was done, according to his own testimony, between the time when he says he reduced the invention to practice and the time when he visited Chicago, towards giving the public the benefit of his discovery. On the contrary, he secreted it from the public. Moreover, he did nothing with his invention between the time when he constructed his first device and the date upon which his application was filed. To permit him to displace an inventor who in good faith has given the public the benefit of the invention would be to defeat the very purpose of the patent law, which is to stimulate invention that the public may be benefited. He has failed to offer a single valid reason or excuse for his delay. His invention, according to his own statement, was perfected sometime in the fall of 1904, and yet he did nothing towards asserting his rights until more than a year had elapsed; and his reason for then acting, as above stated, was that Bowes had placed his rack upon the market. Howard was under no obligation to give the public the benefit of his discovery, but by failing to do so he assumed the risk that some other inventor might do so and thus in the eyes of the law become the prior inventor, and as such entitled to a patent. *Mason* v. *Hepburn,* 13 App. D. C. 86; *Thomson* v. *Weston,* 19 App. D. C. 373; *Matthes* v. *Burt,* 24 App. D. C. 265; *Bliss* v. *McElroy,* 29 App. D. C. 120; *Richards* v. *Burkholder,* 29 App. D. C. 485.

The decision of the Commissioner was clearly right, and is affirmed.

The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, in accordance with law.                *Affirmed.*